IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**KEESHA SMALLS,**

    **Plaintiff,**

v.                                                                  CIVIL ACTION NO. 1:21-cv-00398

**ALORICA INC., and**                               JUDGE
**INTUIT INC.,**

    **Defendants.**

## COMPLAINT

Comes now the Plaintiff, Keesha Smalls, and brings her complaint against Defendants, Alorica Inc. and Intuit Inc., and in support, avers as follows:

### THE PARTIES

1.    Plaintiff, Keesha Smalls, is an African-American female and single mother of a fourteen-year-old son. Ms. Smalls was formerly employed by the Defendants at their business location in Bluefield, West Virginia.

2.    Defendants Alorica Inc. ("Alorica") and Intuit Inc. ("Intuit") jointly operate the call center in Bluefield, West Virginia, where Ms. Smalls was previously employed.

3.    Accordingly, at all relevant times, Defendants Alorica and Intuit were joint employers of Ms. Smalls, each exercising actual and apparent control over her hiring, firing and conditions of employment.

4    Moreover, Defendants Alorica and Intuit were and remain engaged in a joint business venture, in that they associate to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge. Said joint venture arises out of oral, written, express and/or implied contractual relationships between these Defendants.

## JURISDICTION AND VENUE

5. Jurisdiction is appropriate based on diversity of citizenship, as Ms. Smalls is a resident of West Virginia, and Defendants Alorica and Intuit are foreign corporations with their principal places of business located outside the State of West Virginia. Moreover, the presence of diversity jurisdiction allows this Court to exercise supplemental jurisdiction over the West Virginia statutory and common law claims asserted by Ms. Smalls.

6. Venue is appropriate because the majority of the acts complained of occurred within the Southern Federal District of West Virginia.

## THE FACTS

7. Ms. Smalls was hired by Defendants in the summer of 2019 as a Chat Agent at the Defendants' call center in Bluefield, West Virginia ("call center").

8. Soon after beginning her employment at the call center, Ms. Smalls personally experienced both explicit and implicit racial bias and discrimination, and reported it to her employment superiors and agents of the Defendants throughout her employment.

9. However, remedial action was not taken by the Defendants, and/or any remedial action attempted by the Defendants was woefully insufficient.

10. This was consistent with the overall racial disparity and the culture of racial bias and discrimination that existed at the call center.

11. Individuals who identify as minorities - particularly African-Americans - experience disparate treatment in employment, and were and/or are denied employment opportunities by the Defendants at the call center. For example:

12. African-Americans have not been hired at the call center by the Defendants proportionately with their representation in the local community. Thus, the number of African-American employees at the call center is disproportionate to the percentage of the local population.

13. African-Americans have not been promoted and have been denied employment opportunities at a disparate rate compared to Caucasian employees of the Defendants. As an example, at all times relevant, there were no African-Americans holding management positions at the call center.

14. African-Americans have been terminated from their employment at a disparate rate compared to Caucasian employees of the Defendants, and/or have resigned at a disproportionate rate due to the culture of racial bias at the call center.

15. African-American employees were, at all relevant times, subject to different standards related to conditions of employment at the call center, including without limitation, those associated with work attire.

16. Official complaints were asserted internally by both minority and Caucasian employees regarding racial bias and discrimination at the call center, and an investigation was allegedly conducted by the Defendants.

17. However, the complainants and/or affected minority employees were not informed of the results of the investigation.

18. Instead, the culture of racial bias and discrimination at the call center worsened after the aforementioned complaints were made.

19. Indeed, many of those employees who lodged the aforementioned complaints and/or those who participated in the investigation experienced retaliation- and even termination - from employment.

20. The explicit and implicit racial bias and discrimination suffered directly by Ms. Smalls during her employment with the Defendants culminated in October of 2019.

21. On this occasion, Ms. Smalls was speaking with her co-worker Amanda Rogers - who is also an African American female - in the breakroom at the call center.

22. During this conversation, two Caucasian co-workers intervened without invitation. Ms. Smalls and Ms. Rogers informed these co-workers that their conversation was private.

23. Shortly thereafter, on October 25, 2019, John Miller – an employee and agent of the Defendants holding the position of Senior Site Director at the call center - contacted Ms. Smalls by telephone and informed her that she had been terminated from her employment with the Defendants due to what he characterized as the aforementioned and alleged breakroom "altercation".

24. Ms. Smalls later learned that Ms. Rogers was also terminated.

25. Yet, on information and belief, the aforementioned Caucasian employees were not terminated from their employment, and were not even disciplined by the Defendants.

**COUNT I**
**RACE DISCRIMINATION /DISPARATE TREATMENT**
**IN VIOLATION OF THE WEST VIRGINIA HUMAN RIGHTS ACT**
**W. Va. Code § 5-11-1, *et seq.***

26. Ms. Smalls incorporates the preceding paragraphs by reference.

27. "This article shall be known and may be cited and referred to as 'The West Virginia Human Rights Act.'" W. Va. Code § 5-11-1 ("WVHRA").

28. The WVHRA provides that it is unlawful for an employer to discriminate against an employee based on race.

29. Under the WVHRA, "discrimination" means deliberately treating individuals differently because of different individual traits.

30. The WVHRA provides that an employer is liable for discriminatory acts when it knew or reasonably should have known of the discriminatory acts and did nothing to correct them, or expressly or impliedly authorized or ratified them.

31. Claims for employment discrimination based on race brought under the WVHRA are typically brought as a cause of action for disparate treatment.

32. To make a prima facie case of disparate treatment employment discrimination under the WVHRA, an employee must allege the following: (1) that the employee is a member of a protected class; (2) that the employer made an adverse decision concerning the employee; and (3) that but for the employee's protected status, the adverse decision would not have been made.

33. In the present case, Ms. Smalls is an African-American, and a member of a protected class under the WVHRA.

34. As described above, Defendants made adverse decisions concerning Ms. Smalls, including without limitation, taking the most severe adverse action by terminating her employment.

35. The facts of this case lead to the reasonable and/or probable inference that these adverse decisions were motivated by Ms. Smalls' protected status as an African-American.

36. Accordingly, the Defendants have discriminated against Ms. Smalls and treated her in a disparate manner in violation of the WVHRA, and are liable for the damages she has suffered and continues to suffer as a result thereof.

## COUNT II
### RACE DISCRIMINATION/DISPARATE IMPACT IN VIOLATION OF THE WVHRA

37. Ms. Smalls incorporates the preceding paragraphs by reference.

38. Based on the facts and allegations contained herein, the Defendants utilize particular employment practices and/or policies that have caused a disparate impact on African-Americans – a protected class under the WVHRA of which Ms. Smalls is a member.

39. These employment practices and/or policies of the Defendants have had a discriminatory effect on African-American employees such as Ms. Smalls, and have disproportionately affected her and others that are members of this protected class.

40. Accordingly, the Defendants have discriminated against Ms. Smalls based on her race in violation of the WVHRA, and are liable for the damages she has suffered and continues to suffer under the legal doctrine of disparate impact.

## COUNT III
## UNLAWFUL RETALIATION
### (In violation of the WVHRA)

41. Ms. Smalls incorporates the preceding paragraphs by reference.

42. The WVHRA provides that it is unlawful for an employer to engage in any form of reprisal or otherwise discriminate against any person because she has opposed any practices or acts forbidden by the WVHRA, or because she has made a complaint regarding violations of the WVHRA.

43. To have engaged in protected activity under the anti-retaliation provisions of WVHRA, an employee must have challenged or otherwise opposed conduct that she reasonably and in good faith believed to be unlawful under the WVHRA.

44. Even if there is no actionable claim under the WVHRA, the employee still could have been engaged in a protected activity if she complained of conduct that violates the statute.

45. To incur liability under the anti-retaliation provisions of the WVHRA, an employer must have been subjectively and/or objectively aware of the employee's engagement in a protected activity.

46. In the present case, Ms. Smalls opposed and complained with regard to instances of race discrimination to individuals exercising supervisory and decision-making authority on behalf of the Defendants.

47. In retaliation, Ms. Smalls was subjected to adverse employment actions by the Defendants, which included the termination of her employment.

48. Accordingly, the Defendants unlawfully retaliated against Ms. Smalls in violation of the WVHRA, and are liable for the damages she has suffered and continues to suffer as a result thereof.

## COUNT IV
## PRIMA FACIE NEGLIGENCE

49. Ms. Smalls incorporates the preceding paragraphs by reference.

50. Defendants' official employment policy establishes as follows: "Every Alorica employee has the right to work in a professional environment that promotes positive relationships and respect, and is free of discrimination, harassment, and retaliation. Alorica prohibits discrimination against employees and applicants on the basis of a protected classification (such as, race, religion, creed, color, national origin, ancestry, physical or mental disability, medical condition, marital status, age, military and veteran status, genetic information, sexual orientation, gender, gender identity, gender expression or sex)."

51. This policy further establishes that "[d]iscrimination can take the form of intentionally discriminating against an employee or applicant because of their protected characteristic, such as refusing to promote an individual because of their race, sex, or religion."

52. Based on the facts and allegations contained herein, Defendants discriminated against Ms. Smalls and other African-Americans based on their race, in violation of Defendants' own policies and the WVHRA's prohibition against disparate treatment.

53. Defendants' official employment policy further sets forth as follows: "Discrimination can also occur when an employer has a facially neutral policy or practice that unduly burdens employees in a protected class, and the employer does not have a legitimate business reason for this policy or practice."

54. Based on the facts and allegations contained herein, Defendants discriminated against Ms. Smalls and other African-Americans based on race, in violation of Defendants' own policies and the WVHRA, pursuant to the legal doctrine of disparate impact.

55. Defendants' official employment policy also states: "Retaliation for reporting a good faith complaint of harassment or discrimination or participating in an investigation relating to such a complaint, will likewise not be tolerated. Retaliation is a form of discrimination that is unlawful under federal, state, and (where applicable) local law, and strictly prohibited at Alorica. Retaliation occurs when an employee or applicant is punished for asserting their right to be free from unlawful employment discrimination, including harassment. For example, it is against company policy to retaliate against an employee or applicant for taking any of the following actions in good faith: Filing, being a witness, or assisting in a discrimination charge, complaint, investigation, or lawsuit; [and/or] Communicating with a supervisor, manager, or Employee Experience employee about suspected employment discrimination or harassment[.]"

56. Based on the facts and allegations contained herein, Defendants unlawfully retaliated against Ms. Smalls and others, in violation of Defendants' own policies and the WVHRA's prohibition against retaliation for complaining of and/or reporting violations of WVHRA.

57. Finally, per Defendants' official employment policy: "In cases where an employee doesn't follow the policies or meet job requirements, the employee *will* be issued a corrective action notice. The corrective action notice may be a Step I – Verbal Warning; Step II – Written Warning; Step III – Final Written Warning (Probation); or Step IV – Involuntary Termination." (emphasis added).

58. This progressive disciplinary policy was not observed with regard to Ms. Smalls, as she was immediately terminated based on the pretextual allegation of a workplace altercation, and she was not issued a corrective action notice.

59. The Defendants' violations of their own employment policies represent prima facie negligence, and Defendants are liable for the damages Ms. Smalls has suffered and continues to suffer as a result thereof.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Keesha Smalls, prays for the following relief:

a) That she be awarded back pay, including all benefits for which she would have been eligible but for the Defendants' discriminatory and unlawful conduct;

b) That she be awarded front pay, including all benefits for which she would have been eligible but for the discriminatory and unlawful conduct complained of herein;

c) That she be awarded compensatory damages in an amount to be determined by a jury for the physical, emotional and mental distress, humiliation, anxiety, embarrassment, depression, aggravation, annoyance and inconvenience that she has directly and/or proximately suffered as a result of the Defendants' discriminatory and unlawful conduct;

d) That she be awarded all out-of-pocket losses directly and/or proximately suffered as a result of the Defendants' discriminatory and unlawful conduct;

e) That she be awarded prejudgment and post-judgment interest on any and all damages, as provided by applicable law;

f) That punitive damages be assessed against Defendants for their malicious, willful, wanton and fraudulent actions that were carried out with reckless disregard for her legal rights;

g) That she be awarded his costs of litigation, including but not limited to reasonable attorneys' fees, in accordance with the controlling statutory provisions of the WVHRA; and

h) That she be awarded such other and further relief as this Court deems appropriate.

**A JURY TRIAL IS DEMANDED**

        **KEESHA SMALLS,**
        **Plaintiff,**
        **By counsel,**

*/s/ Sean W. Cook*
Sean W. Cook, Esq. (W. Va. State Bar # 10432)
217 Camden Circle, #102
Scott Depot, WV 25560
681.313.9809 (phone)
swcook1215@gmail.com